NOT FOR PUBLICATION (Doc. No. 16)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| GREGORY LASKY, | |
| Plaintiff, | Civil No. 09-5624 (RBK/JS) |
| v. | **OPINION** |
| MOORESTOWN TOWNSHIP, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This is a public accommodations dispute. Plaintiff Gregory Lasky is a paraplegic who claims that Defendant Moorestown Township does not provide proper access to its public library, town hall, sidewalks, and streets. Plaintiff asserts claims under the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA"), and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq. ("NJLAD"). Before the Court is Defendant's motion for summary judgment denying Plaintiff's ADA claim for lack of standing and denying Plaintiff's NJLAD claim because Plaintiff did not request reasonable accommodations before bringing suit. For the reasons discussed below, the Court denies Defendant's motion.

## I. BACKGROUND

Plaintiff resides in Margate, Florida. He has never lived or worked in New Jersey. However, he claims that he is a frequent visitor to Moorestown, New Jersey and that he is harmed by Defendant's failure to ensure that Moorestown's library, streets, sidewalks, and town hall are accessible to disabled persons. Plaintiff is the president of Advocates for Disabled

Americans ("AFDA"). AFDA was a Plaintiff in this matter, but AFDA executed a stipulation of dismissal in February 2010. Plaintiff and AFDA have filed several lawsuits around the country, in New Jersey, and at least one other suit against Moorestown alleging violations of public accommodations laws. According to Plaintiff, AFDA is "based out of New Jersey," and several AFDA members live in South Jersey. (Lasky Cert. dated Feb. 7, 2011 ("Lasky Cert.") ¶¶ 3, 28).

Plaintiff characterizes Moorestown as "almost [his] second home." (Lasky Dep. 6:19). Plaintiff's wife's best friend, Lori Sheridan, resides near Hightstown, New Jersey, and Plaintiff and his wife have a family tradition of celebrating July 4th in South Jersey. (Lasky Dep. in Lasky v. Hightstown, No. L-216-09, (N.J. Super. Ct. L. Div. at 59:17-24)).[1] Plaintiff intends to "return for the July 4th Holidays in 2011, 2012, 2013 and annually." (Lasky Cert. dated Feb. 7, 2011 ¶ 29). Plaintiff also visits New Jersey regularly to fulfill his duties as president of the AFDA and to attend area sporting events. (Id. ¶¶ 5, 8). Plaintiff attends three to five Phillies' games a year. (Id. ¶ 5). In recent years, Plaintiff has also traveled to South Jersey because he was appointed guardian ad litem for Stuart Novak, a mentally disabled man, in a case currently pending before the Superior Court of New Jersey, Camden County. (Id. ¶ 4). In all, Plaintiff travels to South Jersey approximately four times a year. (Id. ¶ 6). He identifies seven specific visits to South Jersey between November 2007 and July 2009.[2] (Pl's Answers to Def.'s Interrogatories, Def.'s Ex. J, at 1).

According to Plaintiff, when he travels to New Jersey, he stays at hotels on Route 73 close to downtown Moorestown. (Lasky Cert. ¶ 9). Plaintiff likes to spend time in Moorestown

---

[1] Plaintiff gave deposition testimony in this matter and a separate but similar matter against the Borough of Hightstown on July 7, 2010. The parties rely on Plaintiff's testimony from the Hightstown matter on this motion for summary judgment.

[2] Plaintiff filed the Complaint in August 2009. Plaintiff returned to Moorestown in January 2010, July 2010, and October 2010. (Lasky Cert. ¶ 27). He "intended to return in January or February 2011, but [his] wheelchair broke due to an accident by Southwest Airlines." (Lasky Cert. ¶ 6).

when he visits South Jersey because his wife enjoys the downtown area, it is the "closest traditional downtown to [his] hotels," and he enjoys the "historical structures." (Id. ¶ 28). Plaintiff uses banks in Moorestown and he visits the public library. (Lasky Dep. at 6:18-7:15). In January 2008, Plaintiff obtained a library card for the Moorestown library. (Id. at 16:16-22).

Plaintiff intends to return to Moorestown "for many reasons:"

> I intend to return to enjoy the services of Moorestown. I love the downtown. It is very attractive with very historical structures. Adjacent to Moorestown are the hotels that I enjoy . . . I intend to return in order to attend sporting events that I enjoy including the Philadelphia Phillies and basketball. I intend to return for my responsibilities for Mr. Novak. I intend to return to Moorestown to perform my duties as President of [AFDA], which is based out of South Jersey. I also intend to return as a tester to ensure that the services of the Defendant are accessible. . . . I intend to return for the July 4th Holidays in 2011, 2012, 2013 and annually.

(Lasky Cert. ¶ 28).

Plaintiff filed the Complaint in August 2009. He claims that during his visits to Moorestown he has difficulty accessing places of public accommodation. Specifically, Plaintiff claims that his "ability to use the downtown [is] greatly impaired because of very steep slopes and cross slopes and lack of level landings at the top of curb cuts." (Id. ¶ 16). According to Plaintiff, "it is dangerous for [him] to travel these curb cuts because they unbalance and top my wheelchair." (Id. ¶ 17). Plaintiff claims that the library does not provide adequate or safe access for wheelchairs and that the men's restroom in the library is not wheelchair accessible. (Id. ¶¶ 22-23). Plaintiff also claims that the town hall is not wheelchair accessible. (Id. ¶ 24). Plaintiff asserts claims under the ADA and the NJLAD. Plaintiff seeks injunctive relief, damages, and attorneys' fees and costs.

Defendant now moves for summary judgment denying Plaintiff's claims. Defendant argues that Plaintiff lacks standing to sue under the ADA and that Plaintiff's NJLAD claim fails

because he did not request reasonable accommodations from Defendant before bringing suit. The parties have submitted their respective briefs, and the motion is ripe for decision.

## II.     LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, the Court is not to make credibility determinations regarding witness testimony.  Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572, 575 (D.N.J. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

However, to defeat a motion for summary judgment, the nonmoving party must present competent evidence that would be admissible at trial.  See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995).  The nonmoving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions [or] conclusory allegations or suspicions" to establish the existence of a genuine issue of material fact.  Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted); see Fed. R. Civ. P. 56(e).  "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' mandates the entry of summary judgment."  Watson v. Eastman Kodak Co., 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting Celotex Corp., 477 U.S. at 322).

### III. DISCUSSION

#### A. Standing

Standing has both constitutional and prudential requirements. The constitutional requirement "is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997); see Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 102 (1998). The party invoking federal jurisdiction bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); accord FOCUS v. Allegheny Cnty. Ct. of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996).

The Third Circuit has articulated three requirements for standing under Article III:

> (1) the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 484-85 (3d Cir. 1998) (citing Lujan, 504 U.S. at 560-61); accord Soc'y Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 175-76 (3d Cir. 2000). There is an additional standing requirement if the plaintiff seeks injunctive relief. City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983). Because injunctive relief concerns future conduct, a plaintiff has standing to seek injunctive relief only if he is likely to be injured by the challenged conduct in the future. Id. ("Lyons' standing to seek

the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers."). "[P]ast exposure to illegal conduct does not show a present claim for injunctive relief . . . ." Brown v. Fauver, 819 F.2d 395, 400 (3d Cir.1987) (quoting O'Shea v. Littleton, 414 U.S. 488, 495 (1974)). Additionally, the future injury must be "real and immediate," not "conjectural or hypothetical." Id. at 102.

Because Title III of the ADA permits a plaintiff to obtain only injunctive relief,[3] an ADA plaintiff suing based on inadequate public accommodations must show a likelihood of future harm. See Clark v. Burger King Corp., 255 F. Supp. 2d 334, 342 (D.N.J. 2003). A plaintiff can satisfy that requirement by showing that he is likely to return to the defendant's facility. Id. Courts use the following factors to evaluate a plaintiff's likelihood of returning to a defendant's facility: "(1) the plaintiff's proximity to the defendants' place of public accommodation; (2) the plaintiff's past patronage at the facility; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of travel near the facility." Dempsey v. Harrah's Atl. City Operating Co., LLC, No. 08-5237, 2009 U.S. Dist. LEXIS 7551, at *8 (D.N.J. Feb. 2, 2009) (citing Disabled Patriots of Am., Inc. v. City of Trenton, No. 07-3165, 2008 U.S. Dist. LEXIS 73010, at *9 (D.N.J. Sept. 24, 2008).

Standing also encompasses a prudential component whereby courts decline to exercise jurisdiction over litigants attempting to assert the rights of another, claiming generalized grievances more appropriately addressed in the representative branches, or where a litigant's complaint falls outside the zone of interests protected by the law invoked. Allen v. Wright, 468 U.S. 737, 751 (1984). In other words, the parties must have a "personal stake" in the outcome of the lawsuit. See Lewis v. Continental Bank Corp., 494 U.S. 472, 478 (1990). Of course, "this

---

[3] The ADA also permits a prevailing plaintiff to obtain attorneys' fees and costs, but it does not permit a plaintiff to recover compensatory, nominal, statutory, or punitive damages. See 42 U.S.C. § 12188; see Clark v. Burger King Corp., 255 F.Supp.2d 334, 342 n.8 (D.N.J. 2003) ("Under Title III, only injunctive relief is available.")

6

case or controversy requirement subsists through all stages of federal judicial proceedings." Id. at 477.

Defendant argues that Plaintiff does not have standing to sue under the ADA because Plaintiff cannot demonstrate a likelihood of future harm. In opposition to Plaintiff's motion for summary judgment, Plaintiff submits a certification explaining his frequent visits to Moorestown and his plans to return to Moorestown in the future. In reply, Defendant states: "Mr. Lasky has done an impressive job of presenting allegations which, if accepted, certainly would establish constitutional standing." (Def.'s Reply Br. at 1). However, "[D]efendant questions the veracity of not only the [P]laintiff's description of prior patronage of Moorestown's programs, services and local businesses, but also his professed intent to return. . . . Moorestown therefore requests an evidentiary hearing so that the Court can determine whether Mr. Lasky has constitutional standing to assert his claims under the ADA." (Id. at 2).

The facts clearly establish that Plaintiff is likely to return to Moorestown, and, consequently, that he has standing to bring his ADA claim. Although Plaintiff resides in Florida, he visits Moorestown several times a year for personal and business reasons unrelated to monitoring Defendant's compliance with public accommodations laws. Specifically, Plaintiff is president of an organization that is based in South Jersey, his wife's best friend lives close to Moorestown, he is currently guardian ad litem for a party engaged in litigation in Camden County, and he has a family tradition of visiting South Jersey on July 4th. When Plaintiff travels to South Jersey for those reasons, he stays at hotels adjacent to downtown Moorestown and uses Moorestown's nearby facilities. Plaintiff's claims regarding his visits to Moorestown are substantiated by the fact that he holds a library card for the Moorestown library and has made

7

more than ten visits to Moorestown between November 2007 and October 2010. These facts establish that Plaintiff is likely to return to Moorestown in the future.

Moreover, although Defendant asserts that Plaintiff's testimony is untruthful, Defendant presents no evidence contradicting Plaintiff's certification. Indeed, although Plaintiff's deposition testimony is less specific, it is consistent with his certification. Plaintiff testified at his deposition that he visits South Jersey every July 4th, (Lasky Dep. 67:4-7) ("like I said, it's a family thing, we come up for the 4th of July"), that he is guardian ad litem in a pending Camden County litigation, (id. 12:1-17), that his wife's best friend lives near Moorestown, (Lasky Dep. in Lasky v. Hightstown, No. L-216-09, (N.J. Super. Ct. L. Div. at 59:17-24), that he holds a library card from the Moorestown library, (Lasky Dep. 16:16-22), and that he stays in hotels adjacent to Moorestown when visiting South Jersey, (id. 7:16-9:19). Plaintiff's deposition testimony corroborates his certification, and Defendant submits no evidence suggesting that Plaintiff's testimony is untruthful. Thus, an evidentiary hearing regarding standing is unnecessary.

The Court notes, however, that the "case or controversy requirement subsists through all stages of federal judicial proceedings." Lewis, 494 U.S. at 477. Thus, Defendant may, at any time, move for dismissal of Plaintiff's request for injunctive relief for lack of standing if subsequent developments suggest that Plaintiff is no longer likely to return to Moorestown. At this point, however, Plaintiff has satisfied his burden of proving that he is likely to return to Moorestown. Thus, the Court denies Defendant's motion for summary judgment regarding Plaintiff's ADA claim.

### B. NJLAD

Defendant argues that Plaintiff's NJLAD claim fails because Plaintiff did not request reasonable accommodations from Defendant before filing suit. Specifically, Defendant argues

that Plaintiff was required to engage Defendant in an interactive process to determine how Defendant could reasonably accommodate Plaintiff's specific needs.  Plaintiff responds that the NJLAD does not impose any such requirement.  He argues that the NJLAD requires Defendant to make areas of public accommodation generally accessible to disabled persons and that he can sue Defendant at any time if it fails to satisfy that obligation.

The NJLAD prohibits discrimination against the disabled.  N.J. Stat. Ann. § 10:5-4; N.J. Stat. Ann. § 10:5-12; see Estate of Nicolas v. Ocean Plaza Condominium Ass'n, Inc., 909 A.2d 1144, 1154-55 (N.J. Super. Ct. App. Div. 2006) (holding that NJLAD provides a cause of action for disability discrimination).  A place of public accommodation discriminates against the disabled and is liable under the NJLAD if it fails to reasonably accommodate the disabled by providing suitable accesses to its services and facilities.  See Franek v. Tomahawk Lake Resort, 754 A.2d 1237, 1243 (N.J. Super. Ct. App. Div. 2000) ("It is unquestionably a violation of the LAD for the owner or operator of a public accommodation to tell a person, either directly or indirectly, that his or her patronage is not welcome because of a trait or condition which the LAD protects from discriminatory action, even though use of the facility on the particular occasion is not denied."); D.I.A.L., Inc. v. New Jersey Dept. of Comm. Affairs, 254 N.J. Super. 426, 439 (N.J. Super. Ct. App. Div. 1992) ("The LAD is intended to provide the handicapped full and equal access to society, limited only by physical limitations they cannot overcome.").

The NJLAD does not expressly require a plaintiff to notify a defendant about its failure to provide access to the disabled.  See Potente v. Cnty. of Hudson, 900 A.2d 787, 791 (N.J. 2006).  However, in the employment context, New Jersey courts have held that a plaintiff may bring certain disability discrimination claims only if he has notified his employer of his disability and engaged the employer in "constructive dialogue" regarding a reasonable accommodation.  Viscik

v. Fowler Equip. Co., 800 A.2d 826, 837 (N.J. 2002); see also Victor v. State, 952 A.2d 493, 504-03 (N.J. Super. Ct. App. Div. 2008); Tynan v. Vicinage 13 of Superior Court, 798 A.2d 648, 656-57 (N.J. Super. Ct. App. Div. 2002). The reason for this requirement is that an employer cannot be expected to fulfill its obligation to provide a reasonable accommodation unless the employee notifies the employer of his disability and cooperates with the employer in identifying a suitable accommodation. See Sinclair, 2009 N.J. Super. Unpub. LEXIS 712, at *14-17 (explaining that an employee must request accommodations for his disability).

Plaintiff argues that although the New Jersey Supreme Court requires disabled employees to request reasonable accommodations before suing an employer for discrimination under the NJLAD, the Court should not impose that requirement on Plaintiff. Plaintiff asserts that the NJLAD imposes an affirmative obligation on places of public accommodation to provide access to the disabled. Plaintiff interprets that obligation to me that a disabled person can sue whenever a facility is structurally inaccessible even if the disabled person did not notify the owner or operator of the purported barrier or request a non-structural accommodation. Plaintiff's argument is overstated.

Plaintiff's argument presumes that a place of public accommodation commits a per se violation of the NJLAD if it does not comply with building codes related to disabled access. However, that is not the law. A facility discriminates against the disabled in violation of the NJLAD if it fails to provide facilities and services that reasonably accommodate the disabled. See Franek, 754 A.2d at 1243. Compliance with building codes may be evidence of disability discrimination, but it is not necessarily determinative. See id. at 1242. To be sure, structural alterations may be necessary in order to reasonably accommodate the disabled. See generally D.I.A.L., Inc. v. New Jersey Dept. of Comm. Affairs, 426; 603 A.2d 967, 970 (N.J. Super. Ct.

App. Div. 1992) (noting that New Jersey's Handicapped Access Law, N.J. Stat. Ann. § 52:32-4, "requires that all plans and specifications for the construction of any public building must provide facilities for the physically handicapped, to the extent deemed feasible by the contracting authority"). However, in some instances, facilities can fulfill their accessibility obligations by non-structural accommodations. See Estate of Nicolas v. Ocean Plaza Condominium Ass'n, Inc., 909 A.2d 1144, 1154 (N.J. Super. Ct. App. Div. 2006) ("a duty to provide a reasonable accommodation for a resident with a disability does not necessarily entail the obligation to do everything possible to accommodate such a person."). They can, for example, assign "aides to assist persons with disabilities in accessing services." See 28 C.F.R. § 35.150(b)(1) (describing suitable accommodations under the ADA). If a facility provides adequate non-structural accommodations, it may satisfy its accessibility obligations under the NJLAD. See Estate of Nicolas, 909 A.2d at 1153 ("We are convinced that a violation of [the NJLAD], evidenced by a violation of an administrative regulation adopted by the Department of Community Affairs . . . , provides a cause of action for a disabled person when a condominium association fails to provide him or her with a reasonable accommodation.") (emphasis added). Additionally, facilities may not be able to accommodate all disabilities in the same manner. A facility may satisfy its accessibility obligations for one individual through structural modifications, but it may reasonably accommodate another individual with a different disability through non-structural accommodations. See id. at 1154 (stating that the NJLAD requires a "fact-sensitive evaluation" to determine whether the defendant "failed to reasonably accommodate plaintiff's disability"). It follows, therefore, that the NJLAD contemplates that defendants have a meaningful opportunity to provide disabled patrons with reasonable accommodations. See Lasky v. Borough of Hightstown, L-216-09, Transcript of Oral Argument and Ruling, at *27-29 (N.J. Super. Ct. L.

Div. April 1, 2011) (granting summary judgment denying plaintiff's claim because NJLAD required plaintiff to request reasonable accommodations) (attached as Pl.'s Ex. 35). In other words, as is the case in the employment context, the NJLAD requires a plaintiff to at least request a reasonable accommodation when he encounters barriers to access.[4] If the defendant refuses to provide a reasonable accommodation, the plaintiff may sue for relief under the NJLAD.

However, the Court denies Defendant's motion for summary judgment because Plaintiff submits evidence that he notified Defendant of the barriers to accessibility that he encountered and Defendant failed to engage Plaintiff in an interactive process to resolve his accessibility concerns. Specifically, Plaintiff testified that he spoke with a clerk at the library regarding the library's access problems. (Lasky Dep. 68:15-7). According to Plaintiff, she did not offer to provide assistance and responded with an "I-just-work-here" sort of attitude. (Id. 27:10-11). Plaintiff also spoke to a clerk at the city hall regarding his difficulty accessing City Hall and navigating the city. (Id. 54:2-17; 69:5-17). The clerk did not offer to assist Plaintiff with his accessibly concerns. (Id.). That evidence is sufficient to create an issue of fact regarding whether Plaintiff complied with his obligation to request reasonable accommodations.

## IV.   CONCLUSION

For the reasons discussed above, Defendant's motion for partial summary judgment is denied. An appropriate Order shall enter.

---

[4] Plaintiff nevertheless objects that the NJLAD does not include an express requirement that a plaintiff request a reasonable accommodation from a facility and that it is often humiliating for disabled persons to request assistance. However, notwithstanding the absence of an express statutory provision, the New Jersey Supreme Court requires a disabled employee to request reasonable accommodations before suing an employer for discrimination under the NJLAD. See Viscik, 800 A.2d at 837. The Court finds no reason to refrain from applying that rule in the public accommodations context.

Dated: 8/10/2011 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge